DECISION
This matter is before the court after hearing to resolve a claim of adverse possession. By letter of January 24, 2001, the parties have indicated that they are waiving the filing of briefs and the presentation of additional argument, requesting the court to proceed to decision.
The plaintiff claims that he and his predecessors in title have asserted in excess of ten years open, exclusive, continuous and uninterrupted possession and enjoyment of real estate identified as Long Lane Court in Newport. Intervenor Concord Oil of Newport Inc. Silver Spring Business Machine asserts that it has both a claim of usage and claim of ownership of the subject property and requests that the court order plaintiff to cease interfering with that right to ownership.
The plaintiff relies in large measure upon the testimony of Attorney Mark Thayer, a real estate specialist who regularly renders opinions regarding title controversies. Mr. Thayer examined the land evidence records in Newport pertaining to the property as far back as 1877 when title was held by Anna Hunter. The 1875 atlas revealed no indication as to the presence of a court, but the 1907 atlas did reference a private street. Attorney Thayer explained that the deeds for the five properties abutting Long Lane Court used it as a northerly or southerly boundary line. In his opinion the deed descriptions did not suggest anything other than that Long Lane Court is a private way titled to the heirs of Anna Hunter.
Plaintiff David Hanos has lived at 6 Connell Highway for 15 years. The lots which he owns in the area are identified as 189 (blue lot), 239 (orange lot), 13 (yellow lot), 236 (green lot). He acquired Lots 189 and 13 in 1985; and lots 289 and 236 in 1988. The plaintiff described Long Lane's condition in 1985 to be an unpaved gravel court without street lighting dead-ended to the west by state property.
In 1985, lot 189 had two residences upon it. Lot 289 was used for an automobile repair and paint business. Mr. Hanos improved lot 13 with a building which he continues to use to operate his welding business. Lot 289 was also used for the ABC Taxi Service which had a dispatch office on the premises. There was also in existence a wholesale lobster company which had trucks parked on the court and going in and out. The property on the north side of the court, lot 12 (purple), was a two way gas station when plaintiff took up residence in 1985. The business also leased mopeds in the summer months. Subsequently, within three to four years, the gas station became a Sunnybrook Farms convenience store with gas pumps in front of the building. Since 1985, Mr. Hanos improved the court by paving it from Connell Highway to the State property at the western boundary and also contacted the electric company to have a streetlight installed. The pole was already in existence and Mr. Hanos pays approximately 11 to 12 dollars per month for lighting. The Plaintiff shared the cost of the paving with Ely Dias who ran an auto painting and repair and sales business. Dias used the court "quite a bit" and would line up the cars starting at the sidewalk and all along the side of the building.
Mr. Hanos claims that he and his tenants have continuously used Long Lane Court, and maintained and improved it, thus vesting ownership by adverse possession.
Some time in 1987 plaintiff and Mr. Dias had a disagreement about the use of Long Lane Court. From time to time Dias would block plaintiff's access to the court. The plaintiff discussed this with Dias and for awhile the situation was calm, but then it recurred. The plaintiff responded by erecting a row of steel poles down the center line of the court. Dias responded by filing a lawsuit which resulted in a Superior Court determination that the poles could be retained down the center line.
The defendant presented the expert testimony of Attorney Donato D'Andrea, a well known and well-respected title examiner and abstracter. Mr. D'Andrea opined that based upon his comprehensive examination of the land evidence records, Long Lane Court is a private right of way. Several factors compelled the expert to make this conclusion. Mr. D'Andrea noted that each deed creating the original abutting lots refers to Long Lane as a way or a court. The original deed out of Mrs. Hunter in 1907 refers to northern boundary of its lot by a court or way running westerly through the land. The next deed executed by Mrs. Hunter, in 1913, referred to Long Lane Court in a more formal manner by precise description. Mr. D'Andrea was convinced that Long Lane court was not simply a piece of leftover land over which Mrs. Hunter intended to retain ownership. Rather, it is a right of way owned by each abutter to the center line of the court of the section which it abuts that property. What Mr. Hanos owns in fee is subject to the right of Concord Oil to use Long Lane Court.
The court would note that Mr. D'Andrea has been a member of the Bar Association's Title Standards Committee for 20 years. At the regular meetings of that Committee, Mr. D'Andrea and his colleagues discuss latest developments in title law as well as precedents.
The defendant also presented the testimony of Concord Oil's vice president, William Le Clerc. As part of his responsibilities Mr. Le Clerc has overseen his company's operation at 58 Van Zandt Avenue. (Lot 259). He also visited lot 12 (10 Connell Highway) upon which his company leases out for a convenience store with self-service gasoline pumps. Over the past 5 years Mr. Le Clerc has observed patrons and employees of the store use Long Lane court. In fact he had photographs evidencing such use. After the filing of this litigation, the use of the area for parking by plaintiff's tenants became much more intense and diminished availability of parking for Concord's customers.
As early as 1995, Mr. Le Clerc had discussions with Mr. Hanos regarding the purchase of lot 236. According to Mr. Le Clerc's testimony, Mr. Hanos was uncertain who owned Long Lane Court but represented that Concord Road use the court to the center line. In 1997 the two men talked about constructing a center line to the court, an idea which was "put on the table" by Mr. Hanos.
That proposal was later withdrawn by plaintiff, leaving Mr. Le Clerc with the impression that "everything would remain as it had [been] in the past."
After 3 to 4 years of negotiation with Mr. Hanos, Mr. Le Clerc felt that Concord Oil and the plaintiff had reached an agreement regarding the purchase of the property in back. Mr. Le Clerk understood that the company would still be permitted to use Long Lane Court for parking and to gain access to the back lot. On October 20, 1998, the parties signed an agreement referencing the purchase price of the property. Mr. Le Clerc testified that "the men `shook on' the agreed upon terms, `but' [we] were unclear as to what ownership rights were in the court and we were going to have a title search done and some work done to clarify that issue, but at this point in time [I] was under the impression that we had a firm agreement to go forward with the sale of the property of the purchase of the property by Concord Oil."
In any event, Mr. LeClerc understood that although his company could not build on the court, the right to pass and repass would be maintained. A letter, (defendant's J) memorializes the agreement and signifies that Concord paid plaintiff $5,000. Subsequent to this transaction, plaintiff's tenants have parked "blocking the access on the upper portion more than usual." Also, trucks and automobiles have been parked parallel to Long Lane Court which is "really out of the ordinary," according to Mr. LeClerc. Furthermore, the latter was notified by plaintiff "never to park there again." Basically, Concord is asking that the situation be restored to its 1984 status when Concord used the common way for ingress and egress without impediment.
The defendant also presented the testimony of Concord's president Michael Whaley. Mr. Whaley explained that Concord Oil was formed in Newport in 1978 when it purchased the gasoline operation from Newport Oil as well as pieces of property on Aquidneck Island. As part of its business development in southern Rhode Island Concord purchased lot 259 and leased lot 12 from Silver Springs Business Machines which it then sublet to Sunnybrook Farms. Mr. Whaley has had occasion to visit the latter site on a regular basis since 1984. Customers, vendors, employees, and Mr. Whaley himself have used Long Lane Court to park vehicles. Mr. Whaley strongly disagreed with plaintiff's representation in that "no one from lot 12 ever used Long Lane Law Court other than on a very rare occasion."
The credible evidence, both documentary and testimonial compels the court to conclude that each abutter owns to the center line of Long Lane Court. The Court attaches great weight to the testimony of Attorney D'Andrea based upon his comprehensive presentation and vast experience. The truthful testimony of Messrs. LeClerc and Whaley regarding the usage of the court since 1984 defeats any claim of adverse possession. In addition to declaring legitimate the claim of ownership, the court finds that Concord Oil indeed enjoys the right to pass and repass over the area in controversy, a right with which plaintiff cannot interfere.